IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WENDELL WEAVER, | ) |
| | ) |
| Plaintiff, | ) No. 16 C 9400 |
| v. | ) |
| | ) Hon. Virginia M. Kendall |
| ALMA MARTIJA, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER ORDER**

Plaintiff Wendell Weaver, an inmate, brought this action under 42 U.S.C. § 1983 against Defendants Saleh Obaisi, Alma Mia Martija, Hosea, Randy Pfister, Nicholas Lamb, and John Baldwin seeking damages and injunctive relief. (Dkt. No. 14 at 1.) Specifically, Weaver alleges that Defendants deprived him of his constitutional rights, subjected him to cruel and unusual punishment, showed deliberate indifference to his medical needs, and ignored or refused to prevent those deprivations. (*Id.* at ¶ 1.) Defendants Baldwin, Pfister, and Lamb, all of whom are prison administrators and not healthcare providers, have moved to dismiss. Defendant Baldwin, the director of the Illinois Department of Corrections ("IDOC"), moves to dismiss Weaver's claim for monetary damages against him in his official capacity, arguing that § 1983 does not permit such an action. (Dkt. 36 at 3.) Defendants Pfister, Lamb, and Baldwin also move to dismiss pursuant to Rule 12(b)(6), arguing that they were not personally involved in the alleged constitutional violations. (*Id.* at 4.) For the reasons set forth below, the Court grants in part and denies in part Baldwin's Motion to Dismiss and denies Pfister and Lamb's Motion to Dismiss. (Dkt. No. 36.)

1

**BACKGROUND**

The Court takes the following allegations from the Complaint and treats them as true for the purposes of this motion. *See Gillard v. Proven Methods Seminars, LLC.*, 388 F. App'x 549 (7th Cir. 2010). Weaver is currently an inmate at Stateville Correctional Center ("Stateville"), an IDOC facility. (Dkt. No. 14 at ¶ 4.) On August 5, 2015, Weaver dislocated his left pinky finger playing basketball during and immediately informed Officer Chavez, a corrections officer of his injury. (*Id.* at ¶¶ 11-12.) Several hours later, Weaver saw Dr. Obaisi at the Stateville healthcare unit, who declared without x-raying or touching Weaver's finger, that it was not dislocated or broken, but gave him medicine and an x-ray order for the following day. (*Id.* at ¶ 15.)

The next day, medical staff informed Weaver that he could not get x-rays because the x-ray technician was out of town until August 11, 2015, almost a week later. (*Id.* at ¶ 16.) On August 6, Weaver filed an emergency grievance detailing the nature and seriousness of his injury and requesting x-rays, stronger pain medication, and treatment for his finger (the "First Grievance"). (Dkt. 1, Ex. 1.) On August 11, Defendant Lamb, Stateville's chief administrative officer, reviewed the First Grievance and made Weaver resubmit it in the ordinary manner after determining that "an emergency [was] not substantiated." (*Id.*)

After taking x-rays on August 11, 2015, the x-ray technician informed Weaver that his finger was dislocated; however, Weaver still did not receive any medical treatment and filed a second grievance (the "Second Grievance") on August 18, 2015. (Dkt. No. 14 at ¶¶ 18, 21.) In his Second Grievance, Weaver described his lack of medical treatment and the resulting pain and suffering he was experiencing, and requested adequate pain medication as well as treatment for his finger. (*Id.* at ¶ 21.) Dr. Obaisi reviewed Weaver's x-rays around August 27, 2015, made

several unsuccessful attempts to treat his finger, and then sent Weaver to Presence Saint Joseph Medical Center ("St. Joseph") for further treatment. (*Id.* at ¶ 24.) The doctor at St. Joseph's told Weaver it was unlikely his finger could be set properly due to how much time had passed since the injury and referred Weaver to Dr. Fanto, a board-certified hand surgeon. (*Id.* at ¶¶ 25-26.) The Administrative Review Board denied Weaver's Second Grievance and appeal around August 30, 2015. (*Id.* at ¶ 28-30.)

Two days later, Dr. Fanto performed surgery on Weaver's finger. (*Id.* at ¶ 27.) Dr. Fanto set Weaver's finger with a pin and several stitches and discharged him back to Stateville with instructions to care for his finger and scheduled follow-up appointments, including a post-surgery follow-up appointment around September 5, 2015. (*Id.* at ¶¶ 28, 34.) Following his discharge, Weaver received a small supply of medication but continued to experience substantial pain. (*Id.* at ¶ 31.)

Weaver filed his third grievance (the "Third Grievance") on September 1, 2015, seeking pain medication and requesting that he be taken back to St. Joseph for his follow-up appointments. (*Id.* at ¶ 32.) However, Stateville personnel did not take Weaver for any follow-up appointments until September 15, 2015. (*Id.* at ¶ 35.) Dr. Fanto removed his stitches that day and removed the pin in his finger during a second surgery in mid-October. (*Id.* at ¶¶ 35, 39.) Despite the fact that Dr. Fanto prescribed physical therapy after his second surgery, Weaver was not allowed to begin physical therapy for over a month after his second surgery. (*Id.* at ¶ 39.) After completing two months of physical therapy, Physical Therapist Hosea declined further treatment due to Weaver's lack of improvement. (*Id.* at ¶ 40.) Weaver attended a follow-up visit on December 29, 2015, at which point Dr. Fanto recommended a third surgery and another follow-up visit on January 19, 2016. (*Id.* at ¶ 41.) However, to this date Weaver has not been

back to see Dr. Fanto or undergone a third surgery, and Weaver's finger is permanently disfigured and swollen with little function or mobility as a result of his inadequate and delayed treatment. (*Id.* at ¶¶ 41, 47.)

A grievance officer denied Weaver's First Grievance on September 17, 2015, stating it was duplicative of his Third Grievance, and the Administrative Review Board denied his subsequent appeal. (*Id.* at ¶¶ 36-37.) On January 29, 2016, a grievance officer recommended no action be taken on Weaver's Third Grievance since it appeared Weaver was receiving appropriate medical care at that time. (*Id.* at ¶ 43.) Defendant Pfister reviewed and concurred with this determination, and Defendant Baldwin ultimately denied Weaver's appeal of his Third Grievance, finding that the Stateville administration appropriately addressed the issue. (*Id.* at ¶¶ 43-44.)

## **LEGAL STANDARD**

A complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face to survive a 12(b)(6) challenge. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face when the complaint contains factual content that supports a reasonable inference that the defendant is liable for the harm. *Id.* The complaint should be dismissed only if the plaintiffs would not be entitled to relief under any set of facts that could be proved consistent with the allegations. *See Visiting Nurses Ass'n of Southwestern Indiana, Inc. v. Shalala*, 213 F.3d 352, 354 (7th Cir. 2000). In making the plausibility determination, the Court relies on its "judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal,* 129 S.Ct. at 1950). For purposes of this motion, this Court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in the non-movant's favor. *See Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir.

4

2013).

## **DISCUSSION**

Defendants Pfister, Baldwin and Lamb move to dismiss Weaver's claims because: (1) 42 U.S.C. § 1983 does not permit Weaver to sue Defendant Baldwin in his official capacity as the director of IDOC for monetary damages, and (2) Weaver insufficiently alleged that Defendants Pfister, Baldwin, and Lamb were personally involved in the alleged constitutional violations to state a claim under § 1983.

**A.      Weaver's official capacity claim against Defendant John Baldwin**

Weaver concedes that he is not permitted to seek damages against Defendant Baldwin in his official capacity. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n.24 (1997) ("State officers in their official capacities, like States themselves, are not amenable to suit for damages under § 1983."). Weaver is, however, allowed to pursue his claim for injunctive relief against Defendant Baldwin in his official capacity. *See Patterson v. Dimas*, 682 Fed. Appx. 500, 501 (7th Cir. 2017) ("[A]n agency head, sued in his official capacity, is the appropriate target of prospective injunctive relief . . . ."). Weaver's claim for monetary relief against Baldwin in his official capacity is dismissed.

**B.      Weaver's personal involvement claims against Defendants Pfister, Baldwin, and Lamb**

To state a claim against a prison official for deliberate indifference for deficient medical care, the plaintiff "must allege an objectively serious medical condition and an official's deliberate indifference to that condition." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (citing *Arnett v. Webster,* 658 F.3d 742, 750 (7th Cir. 2011)).[1] A defendant must have

---

[1] As Plaintiff recognizes, *Perez* bears a striking similarity to the instant matter. In *Perez*, an IDOC inmate injured his hand during a prison basketball game and experienced an initial five-day delay before seeing a physician and a subsequent ten-month delay before receiving surgery, a surgery made necessary by the initial delay in treatment. *Id.*

5

participated directly in the constitutional violation in order to be liable under § 1983. *Hildebrandt v. Illinois Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003). "[A]n official satisfies the personal responsibility requirement of section 1983 ... if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent. That is, he must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.* (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (internal quotation marks and citations omitted)).

Defendants argue that Weaver's allegations fail to plausibly demonstrate that his written grievances provided Defendants with notice of his medical needs. However, "[a]n inmate's correspondence to a prison administrator may thus establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation." *Perez*, 792 F.3d at 781-82; *see also Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) ("Written notice to a prison administrator may form the basis of a deliberate indifference claim if the plaintiff can "demonstrate that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to an excessive risk to inmate health or safety."). If a prison official is alerted a risk to inmate safety or health by way of a prisoner's correspondence, then the subsequent refusal to exercise his or her authority to intervene may reflect deliberate disregard. *Perez*, 792 F.3d at 782. "In other words, prisoner requests for relief that fall on 'deaf ears' may evidence deliberate indifference." *Id.* (citing *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997)).

---

at 774–76. The inmate filed three grievances in response to the delays in his treatment, follow-up appointments, and surgery, and successfully stated a claim deliberate indifference suits against the grievance officers, including the warden as a result. *Id.* at 774–76, 782.

*(i) Weaver's claim against Defendant Lamb*

Weaver's First Grievance coherently explained the nature of his injury and the events that followed, including Dr. Obaisi's order for an x-ray on August 6, 2015, and the subsequent delay in obtaining the x-ray until August 11, 2015. (Dkt. 14, Ex. 1.) Weaver described his pain as "excruciating" and stated that his finger was so "swollen it looks like it's about to pop." (*Id.*) Weaver also included a request for x-rays, stronger pain medication, and treatment for his finger. (*Id.*) Weaver alleges that Lamb reviewed his First Grievance and determined an emergency was not substantiated, therefore making Weaver resubmit the First Grievance in the ordinary manner. (Dkt. 14 at ¶ 64.) These allegations are sufficient to state a claim against Lamb, as he has alleged that he failed to act after receiving "actual knowledge of [Weaver's] objectively serious medical condition and inadequate medical care through [Weaver's] coherent and highly detailed grievances and other correspondences." *Perez*, 792 F.3d at 782.

*(ii) Weaver's claims against Defendants Pfister and Baldwin*

For similar reasons, Weaver's allegations against Pfister and Baldwin also state a plausible claim for relief. Weaver alleges that both Pfister and Baldwin failed to intervene after reviewing his Third Grievance, which gave them sufficient notice of the objectively serious nature of his injury and of the pain he was suffering due to his inadequate and delayed medical care. (Dkt. 14 ¶ 58.) In his Third Grievance, which was filed on September 1, 2015, Weaver describes his entire experience from the delay in his original x-ray to the painful and unsuccessful attempts to set his finger, as well as his lack of adequate pain medication and his level of pain and suffering as a result. (Dkt. 14, Ex. 3.) He also requests that he be taken back to St. Joseph for his follow-up appointments and receive pain medication in accordance with his discharge instructions. (*Id.*)

Defendants argue that they were entitled to rely on the medical judgments of Weaver's healthcare providers. First, as detailed above, "nonmedical officials can 'be chargeable with the Eighth Amendment scienter requirement of deliberate indifference' where they have 'a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner.'" *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). Second, although Pfister and Baldwin may eventually be able to demonstrate that they reasonably relied on the medical judgment of Weaver's healthcare providers, it is too early in the litigation to make that determination. *Perez*, 792 F.3d at 782. Third, Pfister and Baldwin cannot point to the five months between Weaver filing the Third Grievance and their review of it to excuse their conduct because Weaver's medical issues were not addressed during that period. In fact, despite taking him for his second surgery and follow-up appointment in December, prison staff neglected to take Weaver to his scheduled follow-up visit on January 19, 2016, and Weaver never underwent his recommended third surgery. Even though Weaver received medical care in between the time the Third Grievance was filed and when Pfister and Baldwin reviewed it, such intermittent, delayed, and inadequate treatment cannot absolve Pfister and Baldwin at this stage of the litigation. *See Perez*, 792 F.3d at 774–76.

Weaver has alleged that Pfister and Baldwin had actual notice of his objectively serious medical condition and inadequate care and yet they failed to intervene on his "behalf to rectify the situation, suggesting they either approved of or turned a blind eye to his allegedly unconstitutional treatment." *Id.* This is sufficient to survive Defendants' motion to dismiss. *Id.*[2]; *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) ("A prisoner's statement that he

---

[2] Defendants attempt to distinguish *Perez* from the instant matter because on the grounds that Weaver's wound was not obvious on its face. First, that is irrelevant to the defendants here, as Weaver described his condition and

8

repeatedly alerted [prison officials] to a serious medical condition, that they did nothing in response, and that permanent injury ensued, is enough to state a claim on which relief may be granted – if it names the persons responsible for the problem.").

## **CONCLUSION**

For the reasons set forth above, the Court denies Defendants Pfister and Lamb's Motion to Dismiss and grants in part and denies in part Defendant Baldwin's Motion to Dismiss. (Dkt. No. 36.)

_____
Honorable Virginia M. Kendall
United States District Judge

Date: September 27, 2017

---

resulting pain in detailed grievances reviewed by the Defendants. Further, the fact that the plaintiff in *Perez* had an open wound was not dispositive to the court's ruling. Indeed, the facts are otherwise strikingly similar, both of which involved a dislocated finger suffered from a jail yard basketball game.